IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BARRY D.,[1] ) | |
| ) | Civil Action No. 7:22-cv-00490 |
| Plaintiff, ) | |
| v. ) | REPORT & RECOMMENDATION |
| ) | |
| MARTIN O'MALLEY,[2] ) | By: C. Kailani Memmer |
| Commissioner of Social Security, ) | United States Magistrate Judge |
| ) | |
| Defendant. ) | |

Plaintiff Barry D. ("Barry") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; 42 U.S.C. §§ 1381–1383f. Barry alleges that the Administrative Law Judge Christine McCafferty ("ALJ") erred by failing to adequately explain her alleged deviation from the opinion evidence in accordance with SSR 96-8p, and that the ALJ further failed to adequately represent her psychiatric review technique ("PRT") findings in issuing an residual functional capacity ("RFC") in compliance with Fourth Circuit precedent.

This case is before me by referral under 28 U.S.C. § 636(b)(1)(B), dated October 12, 2023. ECF No. 25. Having considered the administrative record, the parties' filings, and the applicable law, I find that the Commissioner's decision is supported by substantial evidence.

---

[1] Due to privacy concerns and because social security opinions often contain intensely personal medical information about claimants, I use only the first name and last initial of the claimant in such opinions.
[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Accordingly, and the reasons detailed below, I respectfully recommend **GRANTING** the Commissioner's Motion for Summary Judgment, ECF No. 22; **AFFIRMING** the Commissioner's final decision denying Barry's DIB and SSI claims; and **DISMISSING** this case from the Court's active docket.

## STANDARD OF REVIEW

The Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Barry failed to demonstrate that he was disabled under the Act.[3] *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). While substantial evidence is a somewhat deferential standard, the Court does not "reflexively rubber-stamp an ALJ's findings." *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017).

"In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro*, 270 F.3d at 176 (quoting *Craig v. Chater*, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its]

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period for not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work; instead, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. *Hays v. Sullivan*, 907 F. 2d 1453, 1456 (4th Cir. 1990).

In contrast, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" where the court is "left to guess how the ALJ arrived at [her] conclusions"). The ALJ must sufficiently articulate his findings such that the district court can undertake meaningful review. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

## CLAIM HISTORY

Barry filed for Title II DIB and Title XVI SSI in March 2020, claiming his disability began on February 15, 2018, due to reported PTSD, generalized anxiety disorder, bipolar I disorder – manic depression, and major depressive disorder. R. 12, 213, 225. Plaintiff's date last insured is December 31, 2023. The state agency denied Barry's application at the initial and reconsideration levels of administrative review. R. 67–70, 70–71. On November 9, 2021, ALJ Christine McCafferty held a hearing to consider Barry's claim for DIB and SSI. R. 27–43. Counsel represented Barry at the hearing, which included testimony from vocational expert Christine Carrozza-Slusarski. On November 17, 2019, the ALJ entered her decision analyzing Barry's claims under the familiar five-step process[4] and issuing an unfavorable decision denying Barry's claims. R. 12–22.

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform any other work. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); *Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§

The ALJ found that Barry met the insured status requirements of the Social Security Act through December 31, 2023. R. 14. At the first step, the ALJ found that Barry had not engaged in substantial gainful activity since February 15, 2018, the alleged onset date. R. 14. At the second step, the ALJ found that Barry has the following severe impairments: depression; anxiety; post-traumatic stress disorder ("PTSD"); and bipolar disorder. R. 15.

As to the third step, the ALJ found that Barry's impairments, either individually or in combination, did not meet or equal a listed impairment. R. 15. The ALJ specifically considered listing 12.04 (depressive, bipolar, and related disorders), listing 12.06 (anxiety and obsessive-compulsive disorders), and listing 12.15 (trauma and stressor related disorders). R. 15. The ALJ found that with regard to Barry's mental impairments, he had moderate limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. R. 15–16.

The ALJ concluded that Barry retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: he is limited to simple, repetitive tasks with only occasional changes in the work setting and occasional contact with the public and coworkers. R. 15–16.

At the fourth step, the ALJ concluded that Barry is unable to perform any past relevant work. R. 20. At the fifth step, the ALJ determined that, considering Barry's age, education, work experience, and RFC, Barry was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, such as janitor, store laborer, and hand

---

404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a *prima facie* case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

packager. R. 21. Therefore, the ALJ concluded, a finding of "not disabled" was appropriate. R. 21.

The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Barry's request for review. R. 1–6.

## ANALYSIS

Barry alleges that the ALJ failed to adequately explain her deviation from the opinion evidence in accordance with SSR 96-8p, and that she further failed to adequately represent her PRT findings in issuing an RFC in compliance with Fourth Circuit precedent.

**A. Medical History Overview**

Barry is a former construction worker, production line assembler, and saw operator. R. 20. He also served as a mechanic in the Army and saw combat in Operation Desert Storm. R. 726. Barry was 48 years old on the alleged onset date, and he was 52 years old on the date of the ALJ's decision. R. 44. Barry has reported "lifelong" issues with depression and anxiety. R. 687. His symptoms have been treated with a variety of different medications, including mirtazapine, sertraline, and buspirone. R. 579. Barry has a history of substance abuse issues and has undergone several treatment services dating back to 2000. R. 687–88. For his opioid use disorder, he has participated in a suboxone clinic since approximately 2011. R. 687–88.

Barry regularly attended group therapy sessions from January 2018 to November 2018. R. 552–53; 555–56; 562–63; 563–64; 570–71; 577–78; 582–83; 586–87; 597–98; 603–04; 605–06; 608–09. In November 2018, Barry stopped taking his suboxone prescription without consulting his doctor and discontinued his group therapy sessions. R. 725.  After he stopped taking his suboxone, he felt depressed and experienced impaired sleep. *Id.*

On December 13, 2018, Barry reported to the New River Valley Medical Center Emergency Room with confusion and paranoia. R. 336. His family described his behavior as erratic, starting two weeks prior and escalating in the previous three days. *Id.* The exam noted labile affect, slowed and withdrawn appearance, paranoid though content, impaired cognition and memory, and impulsivity. *Id.* Urinalysis was negative for all substances except Buprenorphine. R. 337 (*c.f.* R. 569, noting enrollment in a Buprenorphine clinic.). Barry was admitted to DLP Twin County Regional Hospital for further treatment. R. 356. Staff noted that Barry had "increasing depression with paranoia in the context of medication compliance." R. 352. Barry was discharged on December 17, 2018, with a diagnosis of bipolar I disorder. R. 351.

On January 12, 2019, Barry went to the emergency room at Salem Va. Medical Center because of an emotional crisis. R. 544–45. He stated that he was not doing well, he felt trapped, he did not feel safe at home, and he thought his family was going to be killed. R. 546. That same day, Barry voluntarily entered in-patient treatment at the Veterans affairs Medical Center. R. 724. There his mental status showed a depressed mood and affect, but he was alert and oriented, maintained good eye contact, had normal speech, fair judgment, insight, attention, and concentration. R. 727. Moreover, his impulse control was preserved, his thoughts were linear, logical, and goal directed, and he had neither suicidal nor homicidal ideation. *Id.*

In March 2019, Barry restarted his suboxone treatment and resumed attending group therapy sessions. R. 504; 506. After that time, his mental status seemed improved, and aside from appearing mildly drowsy, his mental status exam was normal. R. 502. Indeed, his mental status exams remained consistently normal throughout 2019, 2020, and 2021 despite Barry's complaints of ongoing anxiety. R. 392–94; 397; 407–08; 421–23; 431–32; 434–35; 439–40; 445–46; 452–53463–64; 471–72; 480–81; 489–90.

On October 8, 2022, Jo McClain, Psy.D., reviewed the record at the request of the Agency. R. 44–54. Although Dr. McCain found that Barry was moderately limited in his ability to interact appropriately with the general public and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, Barry was not significantly limited in the ability to ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, or to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. R. 51. Overall, Dr. McClain found that Barry "would be able to perform work activities in an environment that does not require strict production quotas or pressures to perform rapidly and superficial contact with others [sic]." R. 53. Dr. McClain concluded that Barry's condition was not severe enough to keep him from working, and that Barry could adjust to other work. R. 54

On February 25, 2021, Leslie Montgomery, Ph.D., reviewed the record at the request of the agency. R. 76–79. Dr. Montgomery explained that Barry would be able to work around others on an infrequent and superficial basis, and that he would be able to perform work activities that does not require strict production quotas or pressures to perform rapidly. R. 79.

**B. Administrative Hearing on November 9, 2021**

Barry's hearing occurred by telephone due to the extraordinary circumstances presented by COVID-19. R. 29. Barry testified as to his background, including his age, the fact he lives with his girlfriend, his 11th grade education, lack of a G.E.D. and of a driver's license. R. 31. He testified that in order to get around, he either walks or utilizes public transportation. R. 32. The last job that Barry worked was re-chroming metal parts, which he stopped around November 2019. *Id.* He testified that he had that job for about three months before he found himself unable to get out of bed to go to work. *Id.*

Barry further testified that he was unable to focus on doing anything or get motivated to go. R. 33. He testified he was receiving mental health treatment at the VA, and that he received medication; however, he did not think the medication was effective. R. 33–34. He spoke about his previous incarcerations. R. 35–36. He indicated that his daily routine consisted of being on the couch and watching TV. R. 37. On examination by his attorney, Barry stated that he leaves the house by himself no more than five times in a normal month. R. 38. He stated that he could only focus for five or ten minutes on any given thing, and that he had panic attacks four or five times per week. R. 39.

The vocational expert, Ms. Slusarski, testified that a hypothetical individual with Barry's vocational profile with only occasional changes in the work setting and occasional contact with the public and coworkers could not return to Barry's past work; however, there was other work that could be done, such as a janitor, a laborer stores or warehouse worker, or a hand packager. R. 41–42.

### C. The ALJ Adequately Explained Her Deviation from the Opinion Evidence

Barry argues that the ALJ failed to adequately explain her deviation from the opinion evidence in accordance with SSR 96-8P. *See Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996).[5]

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports her conclusions when developing the RFC. *Teague v. Astrue*, No. 1:10-CV-2767, 2011 WL 7446754 at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative

---

[5] Social Security Rulings are "final opinions and orders and statements of policy interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Id*; *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; *Meadows v. Astrue*, No. 5:11-CV-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing *Davis v. Astrue*, No. 9-CV-2545, 2010 U.S. Dist. LEXIS 132972, at *15–16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimants limitations would cause him to experience his claimed symptoms during work and, if so, how often).

In *Shinaberry v. Saul*, the Fourth Circuit clarified that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" No. 18-2096, 2020 WL 908887, at *4 (4th Cir. 2020) (quoting *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015)). However, *Mascio* does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Id.* In contrast, *Shinaberry* highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." *Id.* (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). *Shinaberry* further confirms that *Mascio* does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to

9

adequately review the evidence and explain her decision. *See also Monroe*, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for her ruling, including discussing what evidence she found credible and specifically applying the law to the record).

Additionally, as the Commissioner correctly points out, because Barry filed his disability claim after March 27, 2017, a revised regulatory framework applied to the ALJ's evaluation of the medical evidence in his case. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)). Under the revised regulations, an ALJ will not defer to or give any specific evidentiary weight to a prior administrative medical finding ("PAMFs"); rather, the ALJ assesses how persuasive the opinion or finding is by considering non-exclusive factors, such as supportability, consistency, relationship with the claimant, specialization, and a catch-all "other," the most important being supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920(c)(a), (c)(1)-(5).

Here, the PAMFs indicated that Barry could not handle strict production quotas or pressures to perform rapidly. R. 53; 79. These findings relate directly to Barry's impairment in concentration, persistence, and pace. The ALJ considered these findings and found them to be only "partially persuasive" because "both medical consultants are medical health specialists and were able to review [Barry's] medical records but did not examine or interview him in person." R. 19. The ALJ was permitted to provide a "source-level" discussion as she did in her opinion. 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1). As noted above, *Mascio* does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC but instead underscores the ALJ's duty to adequately review the evidence and explain her decision.

10

The ALJ pointed out that Barry's depression and anxiety saw quick improvement with medical treatment. R. 19. Furthermore, Barry was able to handle daily activities such as using public transportation, shopping, spending time with others, and handling financial affairs. *Id.*

The ALJ discussed Barry's treatment history in more detail during her RFC analysis. R. 16–20. She noted that Barry received maintenance therapy regularly for opioid dependence that was in remission since the alleged onset date. R. 19. She noted that Barry experienced increased symptoms of depression and anxiety near the end of 2018 (when he suddenly, and without consulting his doctor, stopped taking his suboxone). R. 18. She noted that despite Barry's consistent complaints of anxiety, sleep issues, and lack of interest and motivation, his mental status examination findings were typically unremarkable. R. 20. Indeed, after Barry returned to compliance with his suboxone treatment, maintenance therapy, and group sessions, he did return to a relatively stable mental status. R. 489–490. Taken together, the record contains substantial evidence that supports a finding that the ALJ here fulfilled her duty to adequately review the evidence, and that she explained her decision.

Therefore, having reviewed the record as a whole, I conclude that substantial evidence supports the ALJ's decision to conclude that the opinion evidence from Drs. McClain and Montgomery was only partially persuasive, and that Barry remained able to work at all exertional levels provided the work involved no more than simple, repetitive tasks, occasional changes in the work setting, and occasional contact with coworkers and the public. The ALJ did not fail to adequately explain her deviation from the opinion evidence in accordance with SSR 96-8P. Further, remand is not warranted because the ALJ's decision is not so deficient that it "frustrate[s] meaningful review." *Mascio* at 636. Here, the court is not left to guess at how the

ALJ arrived at her conclusions, and she sufficiently articulated her findings such that the court can undertake meaningful review.

### D. The ALJ Adequately Represented Her PRF Findings

Barry further argues that the ALJ failed to adequately represent her PRT findings in issuing an RFC in compliance with Fourth Circuit precedent. In particular, Barry cites to *Darrell H. v. Kijakazi*, 4:22-cv-00002, 2022 WL 17960460, at *7 (W.D. Va. Dec. 27, 2022) for the proposition that, "an ALJ who at step three finds the claimant's mental [medically determinable impairment] causes at least a 'moderate' limitation in his general ability to maintain [concentration, persistence, or pace] must either specifically account for that work-related limitation in the RFC finding or explain why such a restriction is necessary." This argument is unpersuasive.

In *Darrell H.*, the ALJ erred by failing to provide an accurate, logical explanation showing both "(i) how specific relevant evidence supported [her conclusion about Darrell's capacity to maintain concentration, persistence, or pace]; and (ii) why she apparently rejected other evidence that either undermined her conclusion that Darrell could 'sustain attention' for routine tasks or supported Darrell's claim that he could not persist in those routine tasks at an acceptable pace for eight hours a day, five days a week." *Id.* In this case, however, the ALJ discussed the available medical evidence across the years as it relates to her finding of Barry's moderate limitations in concentrating, persisting, and maintaining focus. R. 16. Additionally, the ALJ discussed the medical opinions of both Dr. Jo McClain, who opined that Barry had mild limitations in concentrating, persisting, or maintaining pace, and Dr. Leslie Montgomery, who "generally reiterated Dr. McClain's opinion." R. 19. Yet the ALJ found these opinions to be only partially persuasive, as she explained that Drs. McClain and Montgomery did not examine or

12

interview Barry in person, and as such, the ALJ imposed greater limitations on Barry's ability to maintain concentration, persistence, or pace. R. 19–20.

Furthermore, unlike the situation in *Mascio*, the ALJ in this case did not ignore Barry's limitations in concentration, persistence, and pace. Instead, she specifically noted the pertinent opinions from Drs. Montgomery and McClain, and found them to be only partially persuasive, pointing out that Barry's condition showed quick improvement and that he was able to perform a variety of daily activities including using public transportation, shop, spend time with others, and handle his financial affairs. R. 19. *Mascio* does not create a *per se* rule that a finding of moderate limitations in concentration, persistence, or pace must always be translated into a specific limitation in the RFC finding. *See Shinaberry*, 952 F.3d at 121 ("[W]e did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC"). The ALJ here appropriately considered the record, explained her reasoning for the assessed RFC, and supported her conclusion with substantial evidence. Contrary to Barry's arguments, the ALJ adequately explained why restrictions concerning concentration, persistence, and pace were not adopted.

## CONCLUSION

For the foregoing reasons, I respectfully recommend **GRANTING** the Commissioner's Motion for Summary Judgment, ECF No. 22; **AFFIRMING** the Commissioner's final decision denying Barry's DIB and SSI claims; and **DISMISSING** this case from the Court's active docket.

## NOTICE TO THE PARTIES

The clerk is directed to transmit the record in this case to Robert S. Ballou, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record.

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party must serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered:  February 14, 2024

*C. Kailani Memmer*
C. Kailani Memmer
United States Magistrate Judge